IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ASHTON MANLEY and<br>NICHOLAS MANLEY,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>DAIMLER AG, MERCEDES-BENZ USA,<br>LLC, ADIENT US, LLC, and<br>DANNY MELENDES<br><br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§  Civil Action No. 3:22-CV-2634-E<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Ashton Manley, Plaintiff Nicholas Manley, and Intervenor Linda Harrison's (collectively, "Plaintiffs") Motion to Remand and Motion for Costs and Fees (the "Motion to Remand"). (ECF No. 4). Having considered the Motion, the response and reply, the relevant portions of the record, and the relevant law, the Court concludes that the Motion to Remand should be, and therefore is, **granted-in-part and denied-in-part**. The Court grants the Motion to Remand with respect to Plaintiffs' request to remand this case back to state court. The Court denies the Motion to Remand with respect to Plaintiffs' request for attorney's fees. For the reasons discussed below, this action is hereby **REMANDED** back to the 134th Judicial District Court of Dallas County, Texas, Cause No. DC-20-16412, (the "State Court") for further proceedings.

## I. BACKGROUND

This case arises out of a two-car accident that occurred on October 4, 2019, in Dallas County, Texas. In their live pleading in State Court—their Eighth Amended Petition[1]—Plaintiffs allege that decedent Letha Harrison (the "Decedent") was traveling northbound on Interstate 35 in a 2011 Mercedes-Benz C300 (the "Vehicle") when her vehicle was struck from behind by Danny Melendes ("Melendes"). (*See* ECF No. 1-1, ¶¶ 11, 25-28). Plaintiffs allege that, as a result of a defect in the Vehicle's driver seat and Melendes's negligence, Letha Harrison suffered spinal fractures, which ultimately resulted in her death on April 10, 2022. (*See* ECF No. 1-1, ¶¶ 138-157, 163-205, 206-210).

On November 2, 2020, Ashton Manley initiated this action in State Court, initially alleging only a claim of negligence against Melendes. (*See* ECF No. 1-3). On December 18, 2020, Ashton Manley, Nicholas Manley, and Letha Harrison filed their First Amended Petition. (*See* ECF No. 1-4).[2] In addition to the negligence cause of action against Melendes, the First Amended Petition

---

[1] Throughout the course of the State Court litigation, numerous original and amended petitions were filed, many of which were mislabeled. Plaintiff Ashton Manley filed the original petition (the "Original Petition") initiating this action in State Court on November 2, 2020. (ECF No. 1-3). On December 18, 2020, Ashton Manley, Nicholas Manley, and Letha Harrison filed a first amended petition (the "First Amended Petition"). (ECF No. 1-4). On May 5, 2021, Ashton Manley, Nicholas Manley, and Letha Harrison filed a second amended petition (the "Second Amended Petition"). (ECF No. 1-13, pgs. 222-274). In October 2021, Ashton Manley, Nicholas Manley, and Letha Harrison filed a third amended petition (the "Third Amended Petition"). (ECF No. 1-15, pgs. 36-112). On April 27, 2022, Intervenor Linda Harrison filed an original petition in intervention after Letha Harrison passed away as a result of injuries sustained in the accident (the "Intervening Petition"). (ECF No. 1-17, pgs. 91-163). On April 27, 2022, Plaintiff Ashton Manley and Plaintiff Nicholas Manley filed a fourth amended petition both individually and as heirs of the decedent (the "Fourth Amended Petition"). (ECF No. 1-18, pgs. 2-74). On May 18, 2022, Plaintiff Ashton Manley, Plaintiff Nicholas Manley, and Intervenor Linda Harrison (now, collectively, "Plaintiffs") filed a fifth amended petition (the "Fifth Amended Petition"). (ECF No. 1-18, pg. 179-251). On August 19, 2022, Plaintiffs filed a sixth amended petition, which was mislabeled as "Plaintiffs'/Intervenor's Fifth Amended Petition;" the Court will refer to this petition as the "Sixth Amended Petition." (ECF No. 1-19, pgs. 25-87). On October 5, 2022, Plaintiffs filed a seventh amended petition, mislabeled as "Plaintiffs'/Intervenor's Sixth Amended Petition;" the Court will refer to this petition as the "Seventh Amended Petition." (ECF No. 1-21, pg. 39-123). On October 19, 2022, Plaintiffs filed an eighth amended petition, mislabeled as "Plaintiffs'/Intervenor's Seventh Amended Petition;" this is Plaintiffs' live State Court pleading, and the Court will refer to it as their "Eighth Amended Petition." (ECF No. 1-1 & ECF No. 1-21, pgs. 124-186).
[2] Letha Harrison was alive at the time of the filing of the State Court lawsuit up through the filing of the Third Amended Petition but died as a result of her injuries on April 10, 2022. (ECF No. 4-1, pg. 8).

asserted product liability claims against Mercedes-Benz Group AG f/k/a Daimler AG ("MBG") and its United States-based subsidiary Mercedes-Benz USA, LLC ("MBUSA") (MBG and MBUSA collectively, the "Mercedes Defendants"). (*See* ECF No. 1-4, ¶¶ 61-121). After Letha Harrison passed away, Intervenor Linda Harrison joined the suit as the decedent's heir. (*See* ECF No. 1-17, pgs. 91-163). Eventually, Plaintiffs joined Adient US, LLC ("Adient") as a defendant—alleging Adient supplied the Vehicle with a defective driver's seat. (*See* ECF No. 1-15, pgs. 36-112).

On January 13, 2021, Plaintiffs served Melendes with their first discovery requests, consisting of interrogatories and requests for production.[3] (ECF No. 4-2, pgs. 12-22). On February 18, 2021, and February 19, 2021, respectively, Melendes served his response to Plaintiffs' requests for production and interrogatories on Plaintiffs. (ECF No. 4-2, pgs. 23-32). The Mercedes Defendants entered their appearance in State Court on February 24, 2021, via special appearances that objected to the jurisdiction of the State Court. (*See* ECF No. 1-13: pgs. 75-111). Plaintiffs served Melendes with a request for initial disclosures;[4] on August 27, 2021, Melendes responded to the request for initial disclosures. (ECF No. 4-2, pgs. 33-38). The Mercedes Defendants served Melendes with four notices for oral deposition. (ECF No. 4-1, pg. 13). Melendes moved to quash the first, second, and third notices; Plaintiffs moved to quash the fourth. (ECF No. 4-1, pg. 13). The Mercedes Defendants eventually deposed Melendes on March 16, 2022; Plaintiffs' counsel participated in the deposition and deposed Melendes as well. (ECF No. 4-2, pgs. 46-79). At the deposition, counsel for both Plaintiff and the Mercedes Defendants questioned Melendes about his responses to Plaintiffs' interrogatories. (ECF No. 4-1, pg. 76).

---

[3] The Court notes that MBG represented to the Court its Notice of Removal that Plaintiffs never sought discovery from Melendes (ECF No. 1, ¶ 21), an assertion that is contradicted by the documentary evidence before the Court.
[4] The date on which Plaintiffs served their request for initial production is unknown to the Court because Plaintiffs have only provided the Court with a copy of Melendes responses to that request.

In July 2022, Melendes filed a Traditional Motion for Summary Judgment on Affirmative Defense of Sudden Emergency (the "Melendes MSJ") in State Court, which Plaintiffs did not oppose. (ECF No. 1-10). On September 16, 2022, the State Court denied the Melendes MSJ. (ECF No. 1-11). On October 19, 2022, Plaintiffs filed their final and live pleading in State Court. (ECF No. 1-1). On October 28, 2022, Plaintiffs dismissed their claims against MBUSA and Melendes, respectively, by filing notices of nonsuit with the State Court. (ECF No. 1-5; ECF No. 1-6).

After Plaintiffs dismissed their claims against Melendes and MBUSA, only MBG and Adient remained in the suit as defendants. On November 23, 2022, MBG filed its Notice of Removal—with Adient's consent—removing the case to this Court. (ECF No. 1). MBG removed the case to this Court on the grounds of diversity jurisdiction, alleging that removal is proper under 28 U.S.C. § 1446 despite occurring more than a year after MBG was joined to the suit as a defendant because Plaintiffs allegedly acted in bad faith to prevent timely removal. (ECF No. 1, ¶¶ 17-26). On December 2, 2022, Plaintiffs filed the Motion to Remand, requesting the Court remand this case back to State Court and award Plaintiffs costs and attorney's fees associated with seeking a remand. (ECF No. 4).

## II. LEGAL STANDARD

### A. Removal Jurisdiction

"Federal courts are courts of limited jurisdiction." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (quotation marks omitted) (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). Thus, federal courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* (citation and quotation marks omitted).

A defendant may remove from state court to federal court "any civil action brought in a

State court [over] which the district courts of the United States would have original jurisdiction." 28 U.S.C. § 1441(a). However, "[b]ecause removal raises significant federalism concerns, the removal statute must be strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quotation marks omitted); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (21941). "The removing party bears the burden of showing that federal jurisdiction exists and removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *see Guiterrez*, 543 F.3d at 251.

A defendant may remove a case from state court to federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332(a), 1441(a). Diversity Jurisdiction requires complete diversity, whereby "all persons on one side of the controversy [are] citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citations and quotation marks omitted). Federal courts can exercise jurisdiction on the basis of diversity of citizenship after removal only if three requirements are met: (1) the parties are of completely diverse citizenship; (2) the case involves an amount in controversy greater than $75,000; and (3) none of the properly joined defendants is a citizen of the state in which the case is brought. *See* 28 U.S.C. §§ 1332(a), 1441(b).

**B.     Removal Procedures**

28 U.S.C. § 1446 governs the procedures regarding removal. Section 1446(b) requires a defendant to remove a state court case within thirty days of either: (1) the filing of the initial state court pleading if the case stated by that pleading is removable; or (2) the receipt by the defendant of a copy of "an amended pleading, motion, order, or other paper" making the case removable. *See* 28 U.S.C. § 1446(b)(1)-(3). For removal based on diversity, § 1446(c)(1) states that:

> A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

28 U.S.C. 1446(c)(1). "When it comes to bad faith," in the context of § 1446(c)(1), "the question is what motivated the plaintiff *in the past*—that is, whether the plaintiff's litigation conduct meant to 'prevent a defendant from removing the action.'" *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293 (5th Cir. 2019), *as revised* (Aug. 12, 2019) (emphasis in original). "The burden of showing that [a plaintiff] acted in bad faith to prevent removal lies with the [d]efendant." *Boney v. Lowe's Home Centers LLC*, No. 3:19-CV-1211-S, 2019 WL 5579206, *2 (N.D. Tex. Oct. 29, 2019) (citations omitted).

"In general, a determination of bad faith is subject to a high burden, and courts are reluctant to find a party acted in bad faith without 'clear and convincing proof." *Id.* (collecting cases). This Court has explained:

> While there is no clear standard for determining bad faith in the § 1446(c)(1) context, courts in the Fifth Circuit have focused their inquiry on whether the plaintiff's conduct indicates manipulation of the removal statute. *See Prescia v. Old Republic Ins.*, Civ. A. No. 18-593-BAJ-EWD, 2018 WL 7001775, at *3 (M.D. La. Dec. 6, 2018) (citation omitted); *Rantz v. Shield Coat, Inc.*, Civ. A. No. 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017) (citation omitted). As characterized by another court [in the Fifth Circuit], "[c]onduct rises to the level of bad faith when a party makes a transparent attempt to avoid federal jurisdiction." *Rantz*, 2017 WL 3188415, at *5 (quoting *Kidwai v. Fed. Nat'l Mortg. Ass'n*, Civ. A. No. SA-13-CV-972-XR, 2014 WL 252026, at *2 (W.D. Tex. Jan. 22, 2014)).

*Id.* The Court next considers Plaintiffs' Motion to Remand, which is fully briefed and ripe for determination.

### III. ANALYSIS

The Court concludes MBG has not met its burden of establishing that Plaintiffs acted in bad faith to prevent removal of this case to federal court. Thus, the Court grants the Motion to Remand with respect to Plaintiffs' request to remand this case back to State Court. The Court declines to exercise its discretion to award Plaintiffs attorney's fees in relation to its prosecution of the Motion to Remand. Thus, the Court denies the Motion to Remand with respect to Plaintiff's request for attorney's fees.

**A.   This Case Is Remanded Back to State Court**

At the outset, it is helpful to note key undisputed facts. It is undisputed that: (1) complete diversity of citizenship exists between Plaintiffs and the remanding defendants; and (2) the amount in controversy exceeds the jurisdictional requirement of $75,000; and (3) none of the properly joined defendants are citizens of the State of Texas.[5] Further, it is undisputed that MBG—with Adient's consent as required by 28 U.S.C. § 1446(b)(2)(A)—removed this action within thirty days of Plaintiffs' dismissal of Melendes and MBUSA, which made the case removable.[6] *See* 28 U.S.C. § 1446(b)(3). Finally, it is undisputed that MBG removed this case to federal court more than one year after the commencement of this action.[7] Thus, the question of remand turns on whether MBG has established that Plaintiffs "acted in bad faith in order to prevent [MBG] from

---

[5] Plaintiff Ashton Manley, Plaintiff Nicholas Manley, and Intervenor Letha Harrison are all citizens of the State of Texas. (ECF No. 1, ¶¶ 10-12). Both remaining defendants—MBG and Adient—are not citizens of the State of Texas. MBG is a *Aktiengesllchaft*—a German stock company—with its "seat" (effective place of business) in Stuttgart, Germany. (ECF No. 1, ¶ 13). Thus, MBG is a citizen of a foreign state for the purposes of diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1603. Adient is a limited liability company organized under the laws of the State of Michigan; its sole member is Adient PLC, a foreign public limited company organized under the laws of Ireland, with its principal place of business in Michigan. (ECF No. 1, ¶ 14). Thus, Adient is not a citizen of the State of Texas for the purposes of diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1603. It is also undisputed that the amount in controversy exceeds the jurisdictional requirement of $75,000. (*See* ECF No. 1-1, ¶ 10).

[6] Plaintiffs dismissed Melendes and MBUSA from the State Court lawsuit on October 28, 2022. (*See* ECF No. 1-5; ECF No. 1-6). MBG filed its Notice of Removal on November 23, 2022—twenty-six days after Plaintiffs dismissed MBUSA and Melendes. (*See* ECF No. 1).

[7] This action was commenced in State Court on November 2, 2020. (*See* ECF No. 1-3). MBG filed its Notice of Removal on November 23, 2022—more than two years after the commencement of this action. (*See* ECF No. 1).

removing [this] action." 28 U.S.C. § 1446(c)(1). The Court concludes that MBG has not carried its burden and thus remands this case back to State Court.

In its Notice of Removal, MBG argues Plaintiffs acted in bad faith in order prevent removal, based on: (1) Plaintiffs' assertion in their State Court petitions that (a) Melendes "was 'unable to avoid striking the rear of [the Decedent's] vehicle,'" and (b) Melendes's "negligence may 'be excused in its entirely due to an unavoidable emergency that he was faced with immediately prior to the accident,'" (ECF No. 1, ¶ 20) (quoting ECF No. 1-1, ¶¶ 25 210); (2) Plaintiffs' alleged failure to seek discovery from Melendes, (ECF No. 1, ¶ 21); (3) Plaintiffs' characterization of the Melendes deposition "as solely 'a liability deposition directly related to the product liability claims against [MBG]'" in Plaintiffs' motion to quash, (ECF No. 1, ¶ 22) (quoting ECF No. 1-8); (4) Plaintiffs' counsel's use of leading questions in the Melendes deposition regarding whether Melendes believed he was driving safely and was faced with a sudden emergency at the time of the accident, (ECF No. 1, ¶ 23); (5) Plaintiffs' decision to not oppose the Melendes MSJ, (ECF No. 1, ¶ 24); and (6) Plaintiffs' dismissal of their claims against Melendes without a settlement agreement or consideration, (ECF No. 1, ¶ 25). The Court is unpersuaded by these arguments.

1. *Plaintiffs' pleadings as to the negligence claim against Melendes*

First, despite MBG's characterization of Plaintiffs' pleadings as continually disclaiming the viability of the negligence claim against Melendes, the record of Plaintiffs' pleadings shows Plaintiffs have consistently pled liability against Melendes. In each of their State Court petitions, Plaintiffs pled a negligence claim against Melendes. From the Second Amended Petition to the Eighth Amended Petition—the live pleading—Plaintiffs included the following identical language alleging their negligence cause of action against Melendes:

> **Causes of Action as to Defendant Danny Melendes**
>
> Plaintiffs hereby incorporate, by reference, the allegations contained in the preceding paragraphs of this Petition
>
> On or about October 4, 2019, Defendant Melendes, in Dallas County, Texas, negligently drove a motor vehicle causing the accident made the basis of this lawsuit.
>
> Defendant Melendes had a duty to exercise reasonable care to avoid a foreseeable risk of injury to others. Defendant Melendes breached said duty.
>
> Defendant Melendes owed a duty to safely operate and maintain control of the vehicle Defendant Melendes was operating on the date in question. Defendant Melendes breached said duty.
>
> Defendant Melendes' negligence was the proximate cause of the accident and some bruising and soreness and may even be excused in its entirety due to an unavoidable emergency that he was faced with immediately prior to the accident.

(ECF No. 1-1, ¶¶ 206-210).[8] MBG points to two lines included in Plaintiffs' various petitions in support of their argument that Plaintiffs disclaimed the viability of their negligence claim against Melendes. (*See* ECF No. 1, pg. 5). MBG contends that Plaintiffs "continually disclaimed" the negligence claim against Melendes because, in their State Court petitions, Plaintiffs stated that: (1) Melendes was "unable to avoid striking the rear of [the Decedent's] vehicle;" and (2) Melendes's negligence "may be excused in its entirety due to an unavoidable emergency that he was faced with immediately prior to the accident." (ECF No. 1, ¶ 20) (quoting ECF No. 1-1, ¶¶ 25, 210). However, given Plaintiffs' consistent assertion of the negligence claim against Melendes, the Court is unconvinced Plaintiffs disclaimed such liability or that Plaintiffs' inclusion of those lines in their various petitions is evidence of bad-faith litigation conduct.

---

[8] (*See also* ECF No. 1-13, pg. 271; ECF No. 1-15, pg. 109; ECF No. 1-17, pg. 156; ECF No. 1-18, pg. 67; ECF No. 1-18, pg. 244; ECF No. 1-19, pgs. 74-75; ECF No. 1-21, pg. 110).

### 2. *Plaintiffs' discovery conduct*

In its Notice of Removal, MBG contends that "Plaintiffs never sought discovery from Mr. Melendes." (Doc. 1, ¶ 21). In Plaintiffs' Motion to Remand, Plaintiffs assert that they served Melendes with discovery—namely, a request for production, a set of interrogatories, and a request for initial disclosures. (Doc. 4-1, pgs. 12-13). Plaintiffs have provided the Court with copies of: (1) their first set of interrogatories to Melendes, (ECF No. 4-2, pgs. 12-15); (2) their first request for production to Melendes, (ECF No. 4-2, pgs. 16-22); and (3) Melendes's respective responses, (ECF No. 4-2, pgs. 23-32). Plaintiffs have not provided the Court with a copy of the request for initial disclosures from Melendes. However, the record does contain a copy of Melendes's responses to Plaintiffs' requests for initial disclosures. (ECF No. 4-2, pgs. 33-38).

In response to Plaintiffs' evidence that they served Melendes with discovery, MBG states—in a footnote in its response to the Motion to Remand—that:

> As Plaintiffs note in their Motion [to Remand], MBG mistakenly stated in its removal papers that Plaintiffs had not served any discovery on Melendes. While such discovery was never served on MBG, because it was not yet a party at the time, as Plaintiffs point out MBG was made aware at the time of Melendes' deposition of Plaintiffs' discovery. MBG regrets this error. But as noted in the text, Plaintiffs' minimal discovery served on Melendes evidenced no serious effort to pursue their negligence claims against him. And MBG accurately cites abundant other evidence in the record supporting that conclusion.

(ECF No. 8, pg. 7 n. 9). As MBG concedes, Plaintiffs made several discovery requests of Melendes. In fact, Plaintiffs' request for interrogatories from Melendes were discussed in the Melendes deposition. Specifically, Plaintiffs' counsel questioned Melendes about his response to the interrogatories and attached the responses to the deposition as an exhibit. (ECF No. 4-2, pgs. 40-45). Counsel for MBG and MBUSA asked Melendes follow-up questions about those responses after they were introduced. (ECF No. 4-1, pg. 76).

Having now conceded that Plaintiffs sought discovery from Melendes, MBG asserts a

second line of argument regarding Plaintiffs' discovery conduct. Specifically, MBG contends that Plaintiffs served only "minimal" discovery on Melendes, which MBG argues "evidences no serious effort [by Plaintiffs] to pursue their negligence claims against Melendes" considering that Plaintiffs made hundreds of discovery requests of other defendants in this case. (ECF No. 8, pg. 7 n. 9). Plaintiffs respond by asserting that MBG is attempting to argue that "there is some mandatory minimum number of interrogatories or document requests that a plaintiff must serve a non-diverse defendant to avoid being in bad faith." (ECF 10, pg. 9). Moreover, Plaintiffs highlight that MBG does not provide the Court with any guidance as what that mandatory minimum is or the kind of inquiry a plaintiff must make to avoid a finding of bad faith. (ECF 10, pg. 9).

MBG points the Court to no case law articulating a rule as to the amount or type of discovery a plaintiff must seek to avoid being found in bad faith. Moreover, MBG directs the Court to no case law in which a court considered the relative amount of discovery sought against different defendants as evidence of bad-faith litigation conduct under § 1446(c)(1). Given that Plaintiffs sought discovery from Melendes, which revealed that Melendes was uninsured, the Court is unconvinced that Plaintiff's decision not to seek additional subsequent discovery from Melendes is evidence of bad-faith litigation conduct.

> 3. *Plaintiffs' motion to quash, use of leading questions at the deposition, and decision not to oppose the Melendes MSJ*

Next, MBG's asserts that Plaintiffs' characterization of the Melendes deposition, in Plaintiffs' motion to quash, "as solely as 'a liability deposition directly related to the product liability claim against [MBG]'" is evidence of bad-faith litigation conduct. (ECF No. 1, ¶¶ 22) (quoting ECF No. 1-8). It is the Court's understanding that the Mercedes Defendants, not Plaintiffs, served Melendes with notices of deposition—MBG has not provided the Court with those notices. However, MBG has provided the Court with Plaintiff's motion to quash the fourth

notice of deposition, which MBG asserts characterized the deposition as relating *solely* to Plaintiffs' product liability claims. (ECF No. 1-8). The relevant portion of Plaintiffs' motion to quash the Melendes deposition states that:

> Plaintiffs have never wavered from the fact that, as a liability deposition directly related to the product liability claims against [MBG], the deposition needs to be conducted by Plaintiffs' lead counsel in this cause, Todd Tracy.

(ECF No. 1-16, pg. 215). The Mercedes Defendants—not Plaintiffs—served Melendes with the notice of deposition. Plaintiffs moved to quash the fourth notice of deposition because of a scheduling conflict. The Court is not convinced that Plaintiffs' understanding of the purpose of the Mercedes Defendants' deposition of Melendes has any significance whatsoever to the question of whether Plaintiffs engaged in bad-faith litigation conduct. MBG has not provided—nor can the Court find—any case law in which a court considered a plaintiff's understanding of the purpose of one defendant's deposition of another defendant in deciding whether § 1446(c)(1)'s bad-faith exception applied.

Additionally, the Court is also unconvinced that Plaintiffs' counsel's use of leading questions during the Melendes deposition is evidence of bad faith litigation conduct. Examiners are allowed to ask such questions of an opposing party in a deposition. *See* TEX. R. EVID. 611(c)(2). Moreover, the record shows MBG and MBUSA asked similarly leading questions of Melendes. (*See* ECF No. 4-2, pg. 69). Similarly, the Court is further unpersuaded that Plaintiffs' decision to not oppose the Melendes MSJ is evidence of bad faith, given that Plaintiffs learned Melendes was uninsured during discovery. (*See* ECF No. 4-2, pg. 69).

### 4. *Plaintiffs' dismissal of Melendes*

Last, the fact that Plaintiffs did not reach a settlement agreement or receive any consideration from Melendes is not—on its own—sufficient to support a conclusion that Plaintiffs engaged in bad faith litigation to prevent removal. In support of its argument that "Plaintiffs' half-

hearted litigation conduct [towards Melendes in State Court] was aimed at preventing removal," MBG points the Court to the Fifth Circuit's decision in *Hoyt*. In *Hoyt*, the Fifth Circuit affirmed a district court's finding of bad faith in the context of 28 U.S.C. § 1446(c)(1) under a clearly erroneous standard. *Hoyt*, 927 F.3d at 293. There, the district court based its finding of bad faith on the following: (1) the plaintiffs "knew months beforehand that the evidence would not support" the claims against the eventually-dismissed defendant; (2) the plaintiffs dismissed the defendant "a mere two days after the one-year deadline expired;" (3) the plaintiffs did not receive any consideration in return for the dismissal; (4) the plaintiffs' witness list for trial did not include fact witnesses relating to the dismissed defendant; and (5) the plaintiffs' expert witnesses made no serious effort to establish the dismissed defendant's liability. *Id.*

The case at hand is materially distinguishable from *Hoyt*. Unlike the *Hoyt* plaintiffs—who dismissed the relevant defendant only two days after the § 1446(c)(1)'s one-year deadline passed—Plaintiffs maintained their claim against Melendes for over two years before filing their notice of nonsuit as to Melendes. Plaintiffs served discovery on Melendes and fully participated in his deposition. Unlike the *Hoyt* plaintiffs, Plaintiffs did not wait for months until the deadline passed with knowledge of that the evidence would not support their claim against Melendes—instead, Plaintiffs dismissed Melendes only after the deposition and discovery revealed that Melendes was uninsured. Accordingly, the Court concludes that Plaintiffs' decision to dismiss its claims against Melendes without a settlement agreement or receiving any consideration is insufficient to establish Plaintiffs engaged in bad-faith litigation conduct to prevent removal.

The Fifth Circuit has consistently held that the removal statute should be strictly construed, and any ambiguities should be resolved in favor of remand. *Gutierrez*, 543 F.3d at 251 (citations omitted). As the party seeking removal, MBG has the burden of establishing that federal

jurisdiction exists and removal was proper. *See Manguno*, 276 F.3d at 723. Under these circumstances, to defeat Plaintiffs' Motion to Remand, MBG must have established that Plaintiffs acted in bad faith to prevent MBG from removing this case to federal court; the Court concludes that MBG has failed to carry this burden. *See* 28 U.S.C. § 1446(c)(1).

### B. Attorney's Fees

The Court next considers Plaintiffs' request for attorney's fees in relation to its prosecution of the Motion to Remand. 28 U.S.C. § 1447(c) provides that "[a]n order remanding [a] case may require payments of just costs any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has explained that, "[a]bsent unusual circumstances, courts *may* award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal [at the time removal was sought]." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added) (citations omitted). "There is no automatic entitlement to an award of attorney's fees" under § 1447(c). *Am. Airlines, Inc. v. Sabre, Inc.,* 694 F.3d 539 (5th Cir. 2012) (reviewing a district court's award of attorney's fees under § 1447(c) for abuse of discretion). The Court declines to exercise its discretion to grant Plaintiffs' request for attorney's fees in relation to its prosecution of the Motion to Remand.

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' Motion to Remand. (ECF No. 4). The Motion to Remand is denied with respect to Plaintiffs' request for attorney's fees pursuant to 28 U.S.C. § 1447(c). The Motion to Remand is granted with respect to Plaintiff's request to remand this case back to State Court. Accordingly, this case is hereby **REMANDED** back to the 134th Judicial District Court of Dallas County, Texas, Cause No. DC-20-16412, for further proceedings.

**SO ORDERED:** June 29, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE